# Ex. A

# 8 complaints, 2 lawsuits, 1 shooting: Why one officer didn't draw more IMPD scrutiny.
# The Indianapolis Star, June 8, 2018

# 8 complaints, 2 lawsuits, 1 shooting: Why one officer didn't draw more IMPD scrutiny

Holly V. Hays, IndyStar   Published 6:01 a.m. ET June 8, 2018



(Photo: Jenna Watson/IndyStar)

The conduct of Indianapolis Metropolitan Police Department officer James Perry was in question.

Eight citizen complaints in just over a year. A federal lawsuit. Harsh language. Fighting with the boyfriend of a pregnant woman who was in a car crash. A shooting that left a man partially paralyzed.

Perry shot Gerald Cole in the back after scuffling with the man and his brother. Perry says Cole reached for his gun. Cole said he was running away from the officer.

"This man just took my whole life away from me," Cole said in an interview with IndyStar.

The 2016 shooting came at the end of Perry's second year on the job, one punctuated by the string of complaints.

"How come this guy wasn't on the map? How come we didn't know about it?" IMPD Chief Bryan Roach said in an April interview with IndyStar. "And that's when I learned that we didn't have an effective early warning system."

Police early warning systems, essentially a mix of personnel-management software and procedures, aim to identify officers with possible behavioral issues so they can receive additional training or coaching.

Experts told IndyStar that an officer who racks up so many citizen complaints without drawing closer scrutiny from supervisors raises questions about accountability and administrative oversight. When police departments miss opportunities to address problem officers, costlier issues can arise and undermine the department's relationship with the community.

Perry, who is still employed by the department, declined to comment for this story, according to his attorney, John Kautzman, who is defending Perry in the Cole lawsuit. Kautzman says Perry's shooting of Cole was a justified use of force, but the attorney declined to speak about the officer's larger disciplinary history.

Rick Snyder, president of the local Fraternal Order of Police (http://www.fop86.org/), points to how a host of the allegations against Perry were determined to be unsubstantiated.

A citizens review board said many of the complaints lacked sufficient evidence.

A grand jury cleared Perry of any criminal wrongdoing in the shooting. A personnel record released to IndyStar did not note any significant discipline.

Whether earlier intervention by IMPD supervisors would have averted some of the complaints against Perry or the shooting is uncertain. But the accumulation of incidents reflected a pattern.

Roach believes the department should have been aware of Perry's record earlier. Motivated to more closely watch the department's roughly 1,600 officers, Roach said IMPD is taking steps toward improvement.

The vow is familiar. In 2013, before Roach was chief, public safety administrators touted new software (/story/news/crime/2013/12/15/indianapolis-police-to-change-complaint-process/4034411/) that would improve the complaint process and, in theory, better identify officers with repeated complaints.

Using that software, though, the department has been working without an early warning system that takes into account every citizen complaint filed against an officer, something Roach believes could leave the department open to missing potential patterns among some of its personnel.

David Harris (http://law.pitt.edu/people/david-harris), a law professor at the University of Pittsburgh and an expert on police accountability, said the intent of an early warning system is to intervene when patterns or trends first arise.

"You don't want to be in a position," he said, "where you are hearing about an officer's real misconduct, bad misconduct for the first time when something terrible goes wrong."

## Identifying patterns of behavior

Police early warning systems have been the subject of national discussion for decades. The U.S. Commission on Civil Rights recommended in 1981 that every police department put such a system in place. In a 2001 report (http://www.ncjrs.gov/pdffiles1/nij/188565.pdf), the U.S. Department of Justice said the objective is to identify officers "who are frequently the subject of complaints or who demonstrate identifiable patterns of inappropriate behavior."

Early warning systems create protections for citizens, officers and the department, Harris said.

"If you don't have those, then you don't catch them until maybe they develop into some kind of catastrophe, and that's just not good for citizens and it's not good for the department," Harris said. "It's very costly when things go wrong at a high level."



IMPD officer James Perry speaks with a woman after a traffic stop in 2016. *(Photo: Jackie Molloy/IndyStar file photo)*

Citizen complaints often are a key component of an early warning system. How some of the complaints against Perry did not draw closer scrutiny from IMPD is because of how the department collects and tabulates the complaints and makes them accessible to supervisors.

For years, IMPD used paper files to record complaints and other information involving officers. About four years ago the department implemented software that could do the job. The software set a threshold: When an officer received three citizen complaints in a quarter or six in a year, the software would alert supervisors.

But there was a snag: Information in those reports wasn't readily available to supervisors. After receiving quarterly or annual reports on their officers, supervisors would then have to request more information on specific incidents.

"When I came in in 2017, I knew that supervisors couldn't access all that," Roach said. "But quite frankly, I thought the ability to start identifying, to flag people that had more complaints than they should have had or had some sort of threshold, I thought that's why we buy it."

Early warning systems can be programmed to register certain criteria. At IMPD, the software tracks a host of factors, including use of force and citizen complaints. But the system only registers complaints that have been found sustained or not sustained — not complaints that had been ruled exonerated or unfounded.

That's a problem for Roach.

"Just because they're exonerated doesn't mean that there's not some sort of pattern or trend there," he said. "And that's what we're trying to look for."

## Accumulating complaints

Many IMPD officers have received citizen complaints. In recent years, statistics compiled by the city show East District officers such as Perry tend to receive more complaints than officers in some of the department's other five districts. On average, about 200 complaints citywide were filed in each of the past three years.

When a person files a formal complaint, the department conducts an internal review of the incident and issues a ruling on each allegation: sustained, not sustained, exonerated or unfounded. Sustained or not sustained reflects whether enough evidence is presented. Unfounded indicates that the allegation did not happen as described. Exonerated means the officer acted within policy.

When the internal review is complete, the department turns the information over to the Citizens' Police Complaint Board (http://www.indy.gov/eGov/City/DPS/CPCO/Pages/home.aspx), whose voting members are nine civilians. The board can uphold the ruling or ask the police chief to revise the finding.

People also can file an informal complaint, which is not reviewed by the citizen complaint board.

Severe discipline can be administered by the chief and a separate panel, the seven-member civilian merit board.

The IMPD Civilian Merit Board (https://www5.indy.gov/Boards/BoardDetails.aspx?BoardId=543) is now under scrutiny following a May decision by its members to reinstate two officers (/story/news/crime/2018/05/10/aaron-bailey-shooting-impd-officer-grilled-over-critical-moments/596879002/) who fatally shot an unarmed black man last summer. The officers believed the man was reaching for a weapon.

Neither of those officers were named in complaints prior to the shooting, according to the complaint board office.

Since the decision, the Fraternal Order of Police launched a public-awareness campaign aimed at educating the public on the "do's and don't's" (/story/news/2018/05/23/aaron-bailey-shooting-indianapolis-fop-wants-public-training-police-encounters/637548002/)of police interactions and encouraging a "comply now, complain later" (/story/news/crime/2018/05/30/indianapolis-fop-campaign-after-aaron-bailey-shooting-criticized/652671002/) approach. The FOP also highlighted the public's ability to file a complaint.

Perry received five formal complaints. One was sustained.

He received three informal complaints, all of which were found to be exonerated.

In one complaint, Sean Devonish said he was pulled over near 21st Street and Post Road in the early morning of Jan. 26, 2016. Other officers arrived, and they began searching his car.

According to the complaint, officers alluded that Devonish had illegal drugs. Devonish said he told Perry that as a taxpayer and a military veteran, he felt he didn't deserve the treatment he was receiving.

"Oh here we go with this s--- again," Devonish remembered Perry saying to him, according to his complaint. "You guys are always trying to f------ pull this military card."

Devonish told IndyStar he has never complained about a police officer before but was moved to do so because he had "never felt the level of disrespect."

The citizen complaint board ruled that the allegations against Perry, including conduct unbecoming an officer, were either exonerated or not sustained.

Devonish was issued four tickets: failure to use a turn signal, not using a seat belt, a headlights issue and an open container violation. All were later dismissed.

"People like Officer Perry make people afraid of police officers," Devonish told IndyStar.



**Bria Fisher and her boyfriend, Michael Miller, filed a complaint against IMPD officer James Perry. Fisher's complaint was not sustained by the civilian complaint board, but Miller's was.** *(Photo: Jenna Watson/IndyStar)*

About two months later another incident occurred that resulted in formal complaints against Perry. Perry got into a fight with the boyfriend of a pregnant motorist after she was involved in a car crash.

Michael Miller on April 13, 2016, arrived at the scene to console his girlfriend, Bria Fisher. Miller, according to his complaint, said Perry was aggressive from the start, asking Miller to move to the sidewalk and away from Fisher. Miller refused. Things turned physical.

A probable cause affidavit written by Perry describes the chaotic exchange after he says Miller pulled away from him.

"I began escorting Miller away from the scene, at which point Miller hit my right arm, causing pain," Perry wrote. "I then grabbed Miller's right arm and attempted to take him into custody, but he pulled away from me. I then grabbed Miller near the back of his neck with my left arm and his right shoulder with my right arm and took Miller to the ground."

"Once on the ground, Miller continued to resist and would not comply with my orders to place his hands behind his back. While I was attempting to get Miller into handcuffs, Fisher came over and began striking me in my head, causing pain."

Miller was charged with battery of a public safety officer, resisting law enforcement and disorderly conduct. Fisher was charged with battery and resisting. Charges against both were later dropped.

Miller and Fisher filed citizen complaints. Fisher's complaint was ruled not sustained, but the board sustained Miller's complaint.

The couple filed a civil lawsuit against Perry in U.S. District Court on April 11 seeking monetary damages, accusing Perry of excessive force and false arrest.

Miller said he spoke up in an effort to bring the department's attention to an incident in which he felt wronged.

"They want to have our trust," he said, "but I feel like this is unexplainable."

One incident involving Perry did not lead to a complaint but did lead to another lawsuit.



Gerald Cole was shot in the back after tussling with IMPD officer James Perry. Perry was never charged with any wrongdoing. Cole has filed a civil suit. *(Photo: Jenna Watson/IndyStar)*

On Oct. 19, 2016 (/story/news/crime/2016/10/19/impd-investigating-officer-involved-shooting-east-side/92422024/), Perry was dispatched to the 100 block of North Denny Street on a theft report.

At the time of the incident, an IMPD spokesman said, Perry was attempting to subdue Stephen Cole, who police said was resisting, when Perry was attacked by his brother, Gerald Cole, from behind. After a "quick and violent struggle" over Perry's gun, IMPD said, Perry fired two rounds at Cole, who was "a short distance away."

In an interview with IndyStar, Cole didn't deny grabbing Perry, saying he did so in an effort to prevent his brother from getting hurt. Cole said he turned to run from the officer when he saw Perry reach for his weapon.

Cole was struck twice — in his back and in his arm. He now uses a wheelchair and requires care from a nurse or family member.

A Marion County grand jury in March 2017 cleared Perry of any criminal wrongdoing (/story/news/crime/2017/03/29/grand-jury-clears-impd-officer-october-shooting/99790866/) in the Cole shooting. IMPD's firearms review board ruled two months later that Perry acted within department policy.

Prosecutors did not file criminal charges against either Gerald Cole or his brother, Stephen, who was arrested that day on preliminary charges of resisting law enforcement.

Cole said he hopes for "swift, strict justice" in the civil lawsuit he filed November 2016 in federal court against Perry and the city of Indianapolis.



**Physical therapist Belinda Smith helps Gerald Cole with his leg braces so they can do daily therapy at his east side home.** *(Photo: Jenna Watson/IndyStar)*

"I mean, it's not all black and white. It's about what's right and what's wrong," Cole said. "I feel like, you know, his wrongs should be corrected."

Kautzman, Perry's attorney in the Cole case, said in a written statement to IndyStar that Perry's use of force that day was not unreasonable.

"We believe the evidence will clearly prove that Officer Perry only used the force he reasonably perceived as necessary to fend off an imminent attack by a suspect who had attempted to tackle him, choke him, and grab his firearm," Kautzman said. "We are confident that a jury will agree after presented with all of the facts."

The Office of Corporation Counsel (http://www.indy.gov/eGov/City/OCC/Pages/home.aspx), which has represented Perry on behalf of the city in the civil lawsuits, declined to comment, citing the pending litigation.

The Citizens' Police Complaint Office says it raised concerns with IMPD about Perry in December 2016 and twice in January 2017.

In a Dec. 21, 2016, memo to then-Chief Troy Riggs, the board cited concerns regarding "Officer Perry's recurring complaints" and sought a revised finding in the complaint related to the pregnant woman. The board requested changing a ruling from not sustained to sustained based on new information.

"Although none of the citizen's behavior is condoned, it is believed that an alternative method should have been utilized to de-escalate the situation while trying to complete an accident investigation," then-board President Robin Kimp wrote. "Even if it meant no report."

In February 2017, Perry's actions drew the attention of Chief Roach. Roach, who took office the prior month, declined the request to change the ruling but recommended that Perry receive a coaching session.

It was the only such coaching session or formal discipline noted in Perry's file.

And it came nearly a year after the incident occurred.

## Ensuring accountability

Duane Ingram, president of the Citizens' Police Complaint Board, said the board's main function is to give residents a voice in the event they feel they have been mistreated.

"I think it's important for me to make sure that the citizens of Indianapolis understand that we have a process, so when this kind of treatment happens, we have rules and a process in place to actually address the issue," Ingram said.

Ingram said he is pleased that the police department has recognized and is taking steps to address the issues in its early warning system.

"Any time we have one officer or any officer to egregiously violate residents' rights and take their power and their authority too far, it's a problem," Ingram said.

Snyder, the president of the police officers union, said his organization fully supports improvements to the department's early warning system.

"Each of the officers we represent believes in a robust system of accountability, and a key step in that process is an effective early warning system," he said. "In fact, we have advocated for such a program."

Since Perry in March 2017 was cleared of any criminal wrongdoing in the Cole shooting, IMPD has been working to develop its new early warning system. Chief Roach said the department is developing training before rolling the system out.



**Indianapolis Metropolitan Police Department Chief Bryan Roach says the department is revamping how it monitors complaints against police officers.** *(Photo: Jenna Watson/IndyStar)*

"I want officers to understand what it's about," Roach said. "And I want supervisors to understand how it's to be used and what it's for."

Reports will be available to supervisors on a daily basis, and when a new indicator —such as a complaint or use of force — is entered into the system, it will be highlighted and the incident report will be available for that supervisor's review. In the new system, Roach said he wanted to eliminate the criteria threshold and instead register every complaint against an officer in real time.

The goal is to address potential issues with officers and get them coaching sooner.

"I'm uncomfortable waiting on a threshold for something that we could have addressed before he or she hit that threshold," Roach said.

Roach said in April that he hoped to have the new system in place within a few months.

Since then a pilot program in the Southwest District began, but the software crashed, according to the chief's office. The department is working with the vendor on updates.

*Former IndyStar reporter Fatima Hussein (https://twitter.com/fatimathefatima) contributed to this story.*

*Call IndyStar reporter Holly Hays at (317) 444-6156. Follow her on Twitter: @hollyvhays (http://twitter.com/hollyvhays).*

Read or Share this story: https://indy.st/2JsjA3m